## Consolidated Textile Corporation v. Magarahan.

(Decided February 2, 1926.)

### Appeal from Henderson Circuit Court.

Master and Servant—Employer Held Not Liable for Breach of Contract, as Employment Terminated by Mutual Consent.—Where cotton mill manager, upon being asked to resign, requested 60 days' notice, which was given, and then quit employment without making claim of right to continue, employer was not liable for breach of contract; employment being terminated by mutual consent.

MALCOLM YEAMAN and YEAMAN, PENTECOST & YEAMAN for appellant.

JOHN C. WORSHAM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

J. C. Magarahan lived with his family in Graniteville, South Carolina, where he was employed as secretary of the Graniteville Manufacturing Company at a salary of $5,000.00 a year. In the month of August, 1920, he had a talk with Allen F. Johnson, vice president Consolidated Textile Corporation, who offered him a salary of $7,-500.00 a year to manage the company's cotton mill at Henderson. After visiting Henderson Magarahan wrote Johnson that he was pleased with the situation and asked Johnson to let him know in writing what the agreement would be. On September 13, 1920, Johnson wrote Magarahan as follows:

"Your letter of the 11th received, and am pleased to note that you like the surroundings at Henderson mill. I understand that you accept the position as manager of this mill at a salary of

$7,500.00, and we are glad to definitely close with you on this basis.''

Magarahan moved to Henderson and took charge of the mill about October 25, 1920. His salary began on October 15th, and he received $7,500.00 for the first year. On October 2, 1921, he was requested by the company to accept a $900.00 reduction in salary as the business was not prospering. After that he continued as manager throughout the second year and for a portion of the third year at a salary of $6,600.00 a year. On January 13, 1923, Vice President Johnson wrote Magarahan that his work had been satisfactory, but that in the interest of economy of operation and reduction of overhead it was necessary to make a change, and he was therefore forced to ask for his resignation. He further stated that W. J. Hunter, his successor, would report on February 15th and that Magarahan would turn over the management to him on that date, and added, ''You will receive salary check, however, for the full month of February.'' On January 16, 1923, Magarahan wrote Johnson acknowledging receipt of his letter of the 13th instant and stating that he would do everything possible to have matters in good shape to turn over to Hunter on his arrival, and that he was very sorry it was necessary to take the step as his connection with the Consolidated Textile Corporation had been a most pleasant one. On January 20, 1923, Magarahan again wrote Johnson as follows:

''Referring to your letter of the 13th instant in which you advise in the interest of economy it would be necessary to make a change in the management of Henderson division and extending me thirty days' notice in which to get ready to turn the office over to my successor, close up my personal affairs, find employment elsewhere and to move my household effects to some other city.

''I am sure you appreciate to move means heavy expense and this added to my living expenses for the next thirty days will fully absorb February salary check. Under the circumstances don't you think the notice too short and unreasonable? While I will be ready to turn the office in good shape over to my successor by the 15th of next month, I certainly hope you will extend to me the same fair treatment accorded both Mr. Kramer and Mr. Rankin, viz., a

check for two months' salary at time management turned over to my successor.

"I want to leave the service of the Consolidated Textile Corporation friendly and pleasant and feel confident my request for fair treatment will receive your favorable consideration."

Johnson replied by letter dated February 9th, 1923, which, after referring to Rankin and Kramer and the circumstances under which they left, concluded as follows:

"We do not think your request for a sixty-day notice is unreasonable, but we do think this should date from January 15th and not February 15th. This will be your authority for issuing check for your salary for one month covering period from February 15th to March 15th."

After that Magarahan was paid up to March 15th.

Without further demand Magarahan brought suit against the Consolidated Textile Corporation on December 26th, 1923, to recover $4,120.00 damages for breach of the contract of employment. The case was removed to the federal court, where plaintiff filed an amended petition crediting the amount sued for with earnings of $2,708.29, which he received from other employment during the alleged contract term. The case was then remanded to the state court, where it was heard without the intervention of a jury and judgment rendered for the balance claimed. Defendant has appealed.

The petition alleged an employment for a year and a continuance in the employment for the first and second years and for a portion of the third year without any change in the terms of the employment except a reduction in salary, and his wrongful discharge on February 9, 1923. In addition to a general denial, the answer presented the following defense:

"Further answering, the defendant says that during the month of January, 1923, the plaintiff and defendant mutually agreed that the defendant's employment of the plaintiff should terminate in the month of February, 1923, and afterwards, to-wit, on or about February 15, 1923, the defendant paid the plaintiff his salary in full up to March 15, 1923, and the plaintiff thereupon voluntarily quit the employment of the defendant."

The court made the following findings of law and facts:

"I find the facts to be:

"The plaintiff was employed by defendant to enter its service and he did enter it on October 15, 1920, at a salary of $7,500.00 per year; that there was no limited time for his employment; that the employment required his constant attention to and service in the defendant's business; that he rendered a full year's service ending October 15, 1921, and continued without any further agreement, except that during the year his salary was reduced to $6,600.00 per year to which he consented; that he so served the defendant during another full year ending October 15, 1922, and again entered upon another year's service without any further agreement and continued till February 15, 1923. On or about January, 1923, he was discharged without any reason other than that the defendant desired to economize in its operations; to his discharge he neither objected nor consented. After he received notice of his discharge he asked the defendant to pay him an extra month's salary to compensate him for the loss occasioned to him by his discharge on short notice and the defendant paid him, upon this request, an extra month's salary (for the month ending March 15, 1923).

"I find the law to be:

"Where one enters the employment of another under the above circumstances, it is presumed that the employment is for one full year; and, where the servant continues in the employment after the expiration of the year without any further agreement, it is presumed that the employment is for another full year; that the plaintiff was employed for a full year beginning October 15, 1922, and ending October 15, 1923, and the defendant had no right to discharge him during that year, except for incompetency, etc.; that his discharge on February 15, 1923, was wrongful, for which the defendant is responsible in damages. The request for and acceptance of one month's salary after February 15, 1923, amounted to a settlement of plaintiff's claim for damages, if anything, but this defense is not pleaded."

In support of the court's findings it is argued that as plaintiff's resignation was requested the allegation in the second paragraph of the answer that he voluntarily quit defendant's employment is not true, and that the paragraph is not sufficient as a plea of accord and satisfaction. If plaintiff had stood on his rights and taken no further action after his resignation was demanded and given, there might be some merit in this contention, but such is not the case. He did not object to the action of the company or insist that he was entitled to continue in its employ. On the contrary, he merely asked for sixty days' notice on the ground that other employes whose services had been terminated were accorded that right. The company agreed to the arrangement with the understanding that the notice should date from January 15th. Thereafter he was paid and accepted full compensation up to March 15th. It can not be doubted that an employment for a stated period may be terminated by the mutual consent of the parties, and where, as here, the employe does not object to the demand for his resignation, but quits the employment after accepting certain concessions as to salary which are granted at his request, his action is none the less voluntary and the case is one where the employment is terminated by mutual consent. Having this view of the case, we conclude that the plea that the plaintiff and defendant mutually agreed that the employment of plaintiff should terminate; that afterwards the defendant paid plaintiff his salary in full up to March 15, and the plaintiff thereupon voluntarily quit the employment of the defendant, was not only sufficient in law, but fully supported by the facts as found by the circuit court.

Wherefore, the judgment is reversed and cause remanded, with directions to dismiss the petition.

Whole court sitting.